Allen, J.
The amount involved in this case is inconsiderable ; but it raises questions for the first time brought before this court for decision. The principles involved deeply affect the rights of many, and are of great practical importance in the administration of justice. Marriage settlements are comparatively rare in *398 this state. The wife usually depends upon the provision made for her in the will of the husband, or the interest secured to her in his estate by the law. Her right to dower, frequently the only resource left for her own SUpp0r(_ and the sustenance of her children, is a humane provision of the common law, and has always been much respected. The wife during coverture has a title to dower in all lands of which her husband was seized during the coverture. When he once becomes so seized beneficially for his own use, the title attaches, and at law it is complete. The seisin must be beneficial, and therefore the widow of a trustee would not, at least in equity, be entitled to hold her dower against the cestui que trust. And the seisin must have abided in the husband for some time. Therefore, where the vendor passed the title to the vendee and at the same time took a mortgage for the payment of the purchase money, the two instruments were held to be parts of the same transaction, and the seisin to be that instantaneous seisin, in which the land was merely in transitu, and never vested beneficially in the husband. Gilliam v. Moore, 4 Leigh 30. Where the mortgage is given to secure the purchase money, the bargainor sells to the bargainee upon condition that he shall pay the purchase money at the stipulated time, and if he does not, that the bargainor shall be reseized of the land. In the case under consideration, a conveyance was made to the husband : he took beneficially, entered, and was seized of the absolute fee, and improved the property. He owed a portion of the purchase money ; and for this the vendor’s lien existed. This was an implied lien, the creature of a court of equity, not recognized at law, and therefore interposing no bar to the legal title to dower. That title attached the moment the seisin rested beneficially with the husband ; and though in equity it may be subordinate to the implied lien for the purchase money, upon what principle is it to be held that it shall be divested to any greater extent ?
*399 The case is distinguishable from the wife’s right to dower in a trust estate created before the marriage, or in an equity of redemption. If the estate is subject to a mortgage in fee at the time of the coverture, and so remains during its continuance, there is no seisin in the husband to which the legal title to dower can attach; the whole legal estate of inheritance is in the mortgagee. The rule would be the same where a deed of trust had been given before marriage. In these cases, the right to dower in the equity of redemption is contingent, and never attaches upon the land during the coverture. Being contingent, it is liable to be defeated by a sale out and out during the coverture; such sale converting the surplus into personally. So where, during the coverture, the wife unites in a deed of trust or mortgage, she has parted with her legal title to dower in the estate: her claim becomes contingent by her own act, and is liable to be defeated by a sale during the coverture, and a conversion of the surplus. In these cases her right to dower in the equity of redemption does not vest, so as to attach to the subject, until by the death of the husband the equity of redemption descends to the heir. And if, during the coverture, the husband should alien the equity of redemption without her joining, her right would, after the death of her husband, attach upon it in the hands of the alienee. For as the equity of redemption is an interest capable of descending, unless it has been converted, her claim to dower will attach. Such conversion, so as to defeat her contingent claim, could only be made under a deed existing at the time of the coverture, or a deed to which she was a party, executed during the coverture. The reason which deprives the wife of her dower after a sale under a deed of trust or mortgage executed before marriage, (or during marriage, she having united) has no application, as it seems to me, to a case like the present, where the title is a legal one, not contingent, and has actually vested by the beneficial seisin of the husband.
*400 The case of Little &c. v. Brown, 2 Leigh 353. determines that the vendor taking a mortgage of the subject to secure the purchase money, can only claim under the mortgage, as that supersedes his implied lien. Can it be doubted that in such case, where the mortgage was subsequent to the conveyance, and not part of the transaction, the wife’s right of dower would be paramount to the mortgage ? Such would be the effect, unless the court could give the mortgage relation back to the time of the conveyance; and if it could do so for the purpose of defeating dower, why not' with equal propriety give it the same relation for the purpose of defeating intermediate incumbrances?
In the case of a sale by the vendee to a purchaser without notice, put by the counsel in argument, the implied lien o,f the vendor, as against him, would be gone; yet the wife’s right to dower could not be questioned : and then the anomalous state of things would exist, in which a lien, inferior to the title of the purchaser, would be superior to that of the wife, which yet would be superior to that of the purchaser.
Even where a mortgage has been given for the payment of the purchase money, it is not a legal title which a stranger can set up. Thus in Coates v. Cheever, 1 Cowen 460. Coates had purchased of Harmon, to whom he had, at the time of the purchase, executed a mortgage for the consideration money. Coates sold to the defendant, and conveyed to him in fee; and the defendant also procured an assignment of the mortgage. The court held, that where the tenant in possession enters by virtue of a purchase from the mortgagor, then the subsequent purchase of the mortgage by him is an extinguishment of it, and the widow’s right relates back to the purchase by her husband, and she shall recover; but that where the tenant entered by virtue of a foreclosure, or after a forfeiture for the nonpayment of the money, then the estate is deemed never to have vested *401 in the husband, and the widow is not entitled to dower: thus shewing, that wherever the estate does vest in the husband, the legal title to dower attaches upon the land. There is no conflict between this case and Jackson v. Dewitt, 6 Cowen 317. In that case, the vendor and mortgagee accepted the release. There was a merger; but the same act destroyed the mortgagor’s title. Up to the time of the release, the wife could claim no dower; and the release extinguishing the title, there never was an instant of time in which the widow was entitled to dower.
The case of Pierce’s adm’r &c. v. Trigg’s heirs, 10 Leigh 406. establishes no principle affecting the claim of dower in this case. Judge Tucker there said, that real estate purchased with partnership funds for partnership purposes, and used as a part of the stock in trade, is to be considered to every intent as personal property, not only as between the partners and their creditors, but as between the surviving partner and the representatives of the deceased. The partnership was the cestui que trust, and the holder of the legal title was but a trustee. This is the ordinary case of a trustee, whose widow is clearly not entitled to dower as against the cestui que trust.
If then the wife’s title to dower was a vested interest which attached during the coverture, her legal title to dower in the whole subject could not be controverted at law : and in equity, as it seems to me, it can only be treated as subordinate to the implied lien of the vendor, to the extent of that lien, and no farther. She was no party to the suit by which the legal estate passed out of her husband. A court of equity could only treat her husband as trustee for the vendor to the extent of his lien. Upon the surplus she has a legal claim, and she has done no act to divest her estate. The party purchasing from her husband, whether directly, or indirectly through the intervention of a court of equity and *402 a judicial sale, was bound to notice her legal interest. It was his duty to look to the application of the surplus, and see that it received such direction as would protect him from the wife’s title to dower. By his purchase, he became a party to the proceeding ; he might have seen that the legal title was in the husband ; and if he has neglected to secure himself against a title which, to the extent of the surplus, a court of equity must regard as attaching to the subject and running with it, he must suffer, and not the wife, who was not sui juris and could not protect herself. A contrary rule will furnish a new and convenient mode by which, in innumerable instances, a wife may be barred of dower in her husband’s estate. He may consent to a sale out and out, of an estate of great value, for some trifling balance of purchase money, and after paying the amount, put the residue of the price in his pocket. Such a rule would be against the policy and humanity of the law.
I think, therefore, that the court was correct in holding the widow entitled to dower in the surplus, and that it constituted a charge upon the land in the hands of the purchaser and those claiming under him.
The court below decided, that the widow had a right to charge the property with her dower, after ascertaining what would be the yearly value of that interest by allowing her six per cent, upon one third of the surplus which remained after satisfying the vendor’s lien and the costs; or, at her election, was entitled to a recovery of the present worth'of her annuity. In holding that she had a right to elect to take a sum in gross, I think the court erred. Those entitled in reversion should be consulted ; and where, as in this case, the property is charged in the hands of the purchaser, it may be convenient to pay the annuity, whilst a decree for the present value of it might result in a sacrifice ruinous to the purchaser. The true rule, it seems to me, is laid down in Herbert &c. v. Wren &c. 7 Cranch 370. where *403 chief justice Marshall said, that the assent of one party . . it, • i . cannot aflect the others ; that they have a right to insist that, instead of a sum in gross, one third shall be set apart, and interest thereon paid annually to the tenant in dower during life. The rule would hold a fortiori, where, instead of interest to be raised by setting apart a sum of money, the annuity, as in this case, was a charge on the subject.
In ascertaining the present worth of the annuity, the court adopted Wigglesworth's table of longevity, found in 2 Robinson’s Practice 381. and the method of calculating the present value of an annuity which is there said to have been adopted by mr. Balcer, one of the commissioners of the circuit court of Henrico. That method is manifestly erroneous, as is strikingly exhibited in the present case. The one third of the surplus is ascertained to be 150 dollars 34 cents, and the calculation gives the widow absolutely 122 dollars 2 cents, leaving to the reversioner, if there were one, but 28 dollars 32 cents. The error consists in calculating the discount at simple interest, instead of compound interest. The true rule, I think, is explained and illustrated very fully in a communication with which I have been favoured by judge Smith, who has had occasion to investigate the subject, and has furnished me with an exposition of his views, which will be handed to the reporter to be published in a note to this case. There may possibly be some inaccuracies in the calculations, but the principle, I think, is the correct one. For these errors in the details of the decree, it seems to me it should be reversed, and the cause remanded to the circuit court.
Baldwin, J.
The vendor’s lien is founded in natural justice, and the presumed intent of the parties to the contract. Both forbid that the vendee shall enjoy the property without payment of the consideration. *404 This cannot be prevented, but by a rescission of the contract, which, in the absence of an express provision, is never contemplated by the parties; or by its complete execution, which can only be accomplished, where the personal responsibility of the vendee is inadequate, by subjecting the land to the payment of the purchase money. Such a case falls within the province of a court of equity, w.hich gives relief by a sale of the property, and the due application of its proceeds. This is done without regard to the consideration whether the legal title remains in the vendor, or has been conveyed to the vendee : in either case, that title is employed for the purpose of conferring a complete right upon the purchaser under the decree. The power of the court extends to a sale of the whole property, whatever may be its relative value compared with the amount of the purchase money; but it may be restricted or modified in its exercise, by a discretion arising out of the circumstances of the case. Thus it may be expedient to sell a part only, where the subject is susceptible of division,.and the whole is not requisite for the discharge of the incumbrance. On the other hand, the interest of the parties may require a sale of the whole to prevent a sacrifice, though the result may be a surplus of proceeds beyond the lien. These are matters merely for the discretion of the court, and do not affect its authority in regard to the sale ; and the right of the purchaser under the decree is in no wise dependant upon a judicious exercise of that discretion.
This lien of the vendor is a kind of equitable mortgage, inherent in the contract of sale, and qualifying the ownership of the vendee, whether that ownership be legal or merely equitable. It is of course paramount to the right of the vendee, and of all succeeding to his interest, in the, whole or in part, by operation of law. In equity the vendee is not the owner adversely to the lien of the vendor, but is treated as a trustee for him until payment of the purchase money.
*405 A wife’s right of dower is an emanation from the ownership of her husband, and subject to all its qualifications; though not to his alienations or incumbrances during the coverture, without her consent declared in the mode prescribed by law. Her right is dependant upon his, as existing at the inception of the coverture, or as acquired by him during its continuance. If he mortgage his land before marriage, her claim to dower is subordinate to the mortgage, and, if that be foreclosed, is completely divested. So if she unite, with the requisite solemnity, in his mortgage made after the marriage, the effect of a foreclosure is the same. If, during the coverture, he purchase mortgaged land, her title, like his, is subject to the incumbrance, and the foreclosure of it destroys both. The result is the same where an incumbrance is created by the very act of purchasing; for if the purchase money be unpaid and not secured, an equitable mortgage is embodied in the transaction itself, and if that be foreclosed by a sale of the property under the decree of a court of equity, the wife’s right of dower is completely extinguished.
In the present state of our law, the right to dower springs from the substantial, not the formal ownership of the husband. At common law, it is true, the legal title only was regarded ; and a mere legal seisin, without any beneficial ownership, enabled the wife to recover dower. Thus the wife of a trustee who had the legal estate in fee, and the wife of a mortgagee after condition broken, had a valid title to dower. But the courts of equity corrected this injustice, and in such cases restrained the widow and punished her with costs, if she attempted to recover by legal proceedings. Another consequence of the disregard by the courts of common law of any but legal rights, was, to refuse dower to the widow in trusts and other equitable estates, and consequently in the equity of redemption of a mortgage in fee. This narrowness, instead of being *406 redressed, was followed by the courts of equity, and still prevails in the english jurisprudence. Butin Virginia, New York, and other states of this union, it is corrected by legislative enactments. Our act of 1785 gives dower jn eqUita.ble, in like manner as in legal estates: and in this, as in other respects, the rules and incidents of legal estates are now applied to trust and mortgaged property. The equity of redemption of a mortgage in fee descends to the heirs of the mortgagor; and though the widow is not entitled to dower as against the mortgagee, where the mortgage was executed before the coverture, or during the coverture with her concurrence in the mode prescribed by law; yet in either case she is entitled to dower in the equity of redemption ; for of that, or, what is the same thing, of the estate subject to the mortgage, the husband is to be considered as having died seized. Heth v. Cocke & wife, 1 Rand. 344. Swaine v. Perine, 5 Johns. Ch. R. 492. Hale v. James, 6 Johns. Ch. R. 258. This is equally true of the vendee’s right of redemption in regard to the vendor’s lien. His wife is dowable of that, but of nothing more; or, what is in effect the same, she is dowable of the estate purchased, subject to the equitable incumbrance for the purchase money.
A widow’s right of dower, however, in an equity of redemption, or in other words in the land subject to the incumbrance, legal or equitable, is merely conditional, and dependant upon the fact of redemption. If the heir redeems, she is dowable on contributing ratably; or she may herself redeem, to the extent of her dower, by like contribution. But if she submits to a foreclosure, her right is extinguished. 4 Kent’s Comm. 39. 44. 45. 46. Coates v. Cheever, 1 Cowen 479. Heth v. Cocke & wife, 1 Rand. 344. And the validity of a foreclosure is iu no wise affected by the circumstance that the land is of greater value than the amount of the incumbrance ; or, where the foreclosure is by a sale of *407 the property, that there is a surplus of the proceeds. Heth v. Cocke & wife.
Thus it will be seen that there is no longer any magic in the word, seisin, by which the shadow may be made the substance, or the substance the shadow. A legal title in the husband is nothing as regards the wife’s right of dower, unless accompanied by the beneficial ownership; and the beneficial ownership is every thing, though separated from the legal title.
But there can be no beneficial ownership in opposition to a paramount incumbrance, though there may be in subordination to it. The possession of a mortgagor, his perception of the profits, his improvements, give him no beneficial ownership as against the mortgagee. Upon the foreclosure of the mortgage, his possession, and enjoyment, and improvements are all swept away; and with them his wife’s right of dower, if that be also subject to the mortgage. The practice of the english chancery is simply to foreclose the equity of redemption, the effect of which is to vest the complete ownership of the property in the mortgagee. In Virginia the practice is to direct a sale of the property, and the effect is to confer the title upon the purchaser under the decree, and place the proceeds at the disposal of the court. The enforcement of the vendor’s lien, by a decree for the sale of the property, is in like manner a foreclosure. In all, there is equally a foreclosure of the equity or right of redemption ; and the only difference is, that in the first the title is established in the mortgagee, while in the others it is transferred to the purchaser.
No distinction can be successfully drawn between a legal and an equitable incumbrance, as to the effect upon the wife’s right of dower. In either case the question always is, whether the incumbrance be paramount or subordinate to the dower right. If during the coverture the husband purchase land, receive a conveyance, *408 and at the same time give a mortgage thereon to secure the purchase money, the wife’s right of dower is subject to the mortgage. There the ownership of the husband is qualified by the nature of the transaction. The two instruments are justly considered as parts of the sanie contract, and the result is the same as if the provisions of both were embraced in the same deed. So if the executory contract of sale were to stipulate that the property should be liable for the payment of the purchase money, the vendor would have a lien therefor, even though a conveyance of the legal title were subsequently made to the vendee. And this is substantially the nature of the transaction, where the executory contract is silent upon the subject of a lien : equity supplies the omission, and presumes the parties to have so intended. This presumption, however, arises only where the parties omit to provide expressly for any security. If other security be stipulated, the idea of a lien is thereby repelled. So, too, the implied lien is rejected by the vendor’s taking a mortgage upon the property at a period subsequent to the deed of conveyance. There the vendee becomes the owner, without qualification at the time of the purchase, and the inceptive dower right of the wife thereupon attaches; nor can it be divested by the subsequent incumbrance, without her concurrence therein in the manner provided by law. The equitable lien may, moreover, be lost by reason of a supervening equity in favour of a purchaser from the vendee; as where he obtains a conveyance, and pays the consideration, without notice of the nonpayment of the original purchase money. In that case the widow of the first vendee would be entitled to dower; the incumbrance being extinguished, and her legal right unaffected by any want of notice of it on the part of the subvendee.
That, in the case before us, the wife’s right of dower was subject to the vendor’s lien, there can be no room *409 to doubt; and the decree of the circuit court in her behalf is founded upon that idea, for otherwise it would have been for dower in the land, instead of the surplus proceeds of the sale. The questions therefore which we have to decide are, first, whether the wife was entitled to a share of the surplus proceeds ; and secondly, w'hether the purchaser under the decree in the suit brought by the vendor, and the property in his hands, be liable therefor.
The effect of the sale at the vendor’s suit was to convert the subject from realty into personalty. This is as precisely true in regard to the surplus, as it is in regard to the amount applied to the discharge of the vendor’s claim. Still the wife would have been entitled in equity to a due proportion of the surplus, if her right to dower subject to the incumbrance had been consummated. But this was far from being the case. Her husband was living at the time of the sale, and of the final decree by which it was confirmed; and the proceedings were, with strict propriety, against him alone as the only defendant in that cause. She had then no title whatever. Her right to dower subject to the incumbrance was merely inchoate and contingent, and could never be established but by her survivorship of her husband. The property sold was his, and its conversion from realty into personalty was not his act, but by operation of the paramount incumbrance. In its new form it was still his, after satisfying the incumbrance; but its character being changed, it was no longer subject to a future dower title as realty, but only to that provision which the law makes for a widow out of the personal estate of her husband, subsisting at his death, after payment of his just debts. If the husband had been dead and she surviving at the time of the sale, then her dower right subject to the incumbrance would have been ripened into a perfect title, and her interest in the surplus could not have been divested by the discre *410 tion which the court bad exercised, of selling the w’hole land, instead of such part only as might have been sufficient to discharge the incumbrance. In the language of chancellor Kent, in Titus v. Neilson, 5 Johns. Ch. R. 457. t, jf the rjght of dower be consummated by the husband’s death before the sale, (for it is clear that she would have had no claim upon the proceeds after the satisfaction of the first, mortgage, if the husband had been living) she has a good right in equity to have her dower satisfied out of the surplus proceeds, which represent the equity of redemption.”
Thus I think it clear that the wife had no interest in the surplus of the proceeds of sale, and that it was properly applied, with the consent of the husband, to the satisfaction of his creditors. It is supposed by the counsel for the appellee that this doctrine would lead to abuse, and to the introduction of a new mode of barring the wife’s right of dower. The argument against a just principle, however, founded upon alleged inconvenience in its operation, is always suspicious ; and the inconvenience will generally be found the other way. If a case should occur of a combination, eluding the vigilance of the court, between a vendor or mortgagee and the husband, to expose the whole subject unnecessarily to sale, in order to defeat the contingent dower right of the wife, it will then be time enough to decide, upon a bill with proper averments, what is to be the effect upon that right of such a contrivance. A conspiracy of that kind is rather improbable, when we consider the facility with which husbands usually obtain relinquishments of dower rights from their wives. But in the present case nothing of the sort is pretended; nor is any complaint made of the manner in which the judicial power of the court was exercised ; and it must therefore be taken, if that were material, to have been properly and discreetly exercised, with a due regard to the rights and interests of all concerned in the subject. *411 In fact, the bill is not framed with a view to the recovery of a supposed interest in the surplus proceeds, but for the recovery of dower in the. land itself, upon the utterly erroneous pretension that it was paramount to the vendor’s lien, or, if not so, that the appellee had still a right to redeem upon contributing a due proportion of the incumbrance, notwithstanding its foreclosure by the sale and conveyance to the purchaser under the decree.
On the other hand, upon the supposition of an inchoate and contingent interest of the wife in the surplus proceeds, requiring the protection of the court, by what means was such protection to be afforded ? I can conceive of none other than a sequestration of the surplus, or a sufficient portion thereof, during the coverture, to await the title of the wife, if a title on her part should ever accrue. The coverture might continue for half a century. In the mean time the fund would be locked up, to the prejudice of the husband’s interest, and of the wife’s too, as connected with his. And when the coverture is determined, if by the death of the wife, the precaution will have been merely mischievous, and if by the death of the husband, the value of the wife’s interest, to be ascertained in reference to that period, may not exceed a single dollar. It seems to me an anomalous idea to set apart and withhold from the husband a portion of his estate, for the dower of the wife, if she should ever become entitled to it. Such an equity on the part of a feme covert would require her to be heard as a party in every suit against her husband for the foreclosure of a mortgage, legal or equitable. No one supposes that this would be proper; and the reason simply is, that she has nothing to be protected till the death of her husband.
But if all this were wrong, how is the purchaser under the decree of foreclosure, or the property in his hands, to be affected by the failure of the court to do *412 *ls duty ’n l^at regard ? He accepted the invitation of the court to become the purchaser, received by its order a complete title, and paid up according to its directions the full amount of the consideration. What more ‘ concern had he in the matter ? Was it his duty to resist the mandate of the court ? could he have resisted it? That was impossible. He was bound hand and foot by the authority of the court, and could not move a finger in opposition to its decree. And yet we are now called upon to subject him to loss because of his obedience. Can a court of conscience do this ? Would it not be gross injustice, nay more, would it not be rank oppression ? Establish such a doctrine, and there will never again be a surplus at such a judicial sale.
It surely cannot be true that a purchaser under such circumstances is responsible for an error of the court in the disposition of the proceeds ,‘ or thaL he is bound to see to the proper application of the purchase money. The court itself made w'hat it held to be the proper application, and the purchaser had nothing more to do with it. There are some cases, sufficiently harsh, in which a purchaser has been compelled to see to the proper application of purchase money by the hands of other individuals ; but none, I believe, where the application has been made by the hands of the court. If the court has jurisdiction of the subject, and the proper parties are before it, a purchaser under its decree is not affected by irregularities or errors in the proceedings, provided the sale be made-according to the decree. Nor is he bound to see that only so much of the estate is sold as is necessary for the purposes of the trust; nor to see to the application of the purchase money, when the court takes upon itself the application. 2 Smith’s Ch. Pract. 196. Bennett v. Hamill, 2 Sch. & Lef.566. 1 Sugden on Vendors, 9th edi.p. 58. 2 Id. p. 34.
But let us suppose that the appellee had a valid claim against the purchaser under the decree, and the *413 property in his hands ; it is at best an equitable, not a legal claim ; and if there be others against whom there is a stronger equity, they ought to be resorted to primarily, and the purchaser and the property only eventually. Now surely the creditors of the husband, who in this aspect of the case have improperly obtained the very fund in question, in satisfaction of their claims, ought to be subjected in relief of the innocent purchaser ; and there can be no propriety in making him primarily responsible for what has been appropriated by them, without his default, to their benefit. If therefore the appellee’s pretensions had been well founded, instead of being, as I conceive, utterly baseless, those creditors ought to have been brought before the court, and a decree rendered against them in the first instance, and only eventually against the purchaser and the property in his hands, or in the hands of those deriving title from him.
It is proper to add, that I think the decree also erroneous in the mode and measure of relief granted to the appellee; and on that point I concur entirely in the opinion of judge Allen, and in the valuable suggestions of the enlightened judge who has favoured us with remarks and illustrations upon the proper mode of calculating the present value of life annuities.
Upon the whole case, my opinion is that the decree of the circuit court ought to be reversed, and the plaintiff’s bill dismissed with costs.
Stanard, J.
said, that if he had been of opinion, with judge Allen, that the widow had a valid claim against the purchasers, he should have concurred in the results of that opinion, both in respect to the right of election, and the principle on which the value of the dower interest was to be ascertained. But he was of opinion, with judge Baldwin, that the claim against the purchasers could not be sustained. And therefore the *414 decree of this court was, that the decree of the circuit court should be reversed, and the bill dismissed with costs.

----- Note by reporter.—In the case of Heyward v. Cuthbert, 1 M’Cord 386 recovered a sum In gross, in full of her dower. This case is referred to by Nott, J. delivering the opinion of the court in Wright v. Jennings, 1 Bailey 280. in the following terms: “It appeared that the commissioners had assessed one sixth of the fee simple value of the estate, which assessment was sustained; and the same rule has generally prevailed since that period, and I believe has been approved by experience. We have no table of life annuities in this state, and if we had, the commissioners usually appointed for the performance of this duty would be very incompetent to apply it to the various cases that might arise. I think, therefore, that we had better adhere to the rule adopted in the ease of mrs. Heyward, except in extreme cases, of youth on the one hand, or of age and infirmity on the other; in which something more or less, according to circumstances, may be allowed.” These are the views of the court of appeals of South Carolina. On the other hand the supreme court of Massachusetts, as a guide in estimating the probable duration of the life by which a dower interest is limited, adopted, upon its publication, the table made by professor Wigglesworth of Cambridge university, published in the Transactions of the american academy, vol. 2. p. 133. Estabrook v. Hapgood, 10 Mass. Rep. 315. That table may be seen also in the American Jurist for April 1834, vol. 31. p. 492. as well as in 2 Rob. Pract. 381. It may be inferred from the opinions in Wilson &c. v. Davisson, that in estimating the probable duration of life in Virginia, this table, in the absence of any other better adapted to our state, may be generally used as a guide; liable of course to be departed from, where the particular circumstances of any case shall make it proper to do so. After fixing upon the probable duration of life, it is to be then ascertained, by a proper mode of calculation, what any given sum, payable annually for the estimated term, is worth at present. In Rees’s Cyclopedia, vol. 2. title Annuities, much information is furnished on the subject. The following is extracted from that article.
“Annuities may be considered as payable yearly, halfyearly, or quarterly. The present value of an annuity is that sum which, being improved at compound interest, will be sufficient to pay the annuity.
“ The present value of an annuity certain, payable yearly, and the first payment of which is to be made at the end of a year, is *415 calculated in the following manner. Let the annuity be supposed to be £ 100: the present value of the first payment of it, or of an hundred pounds to be received a year hence, is that sum in hand, which, being put out to interest, will increase to £ 100 in a year. In like manner the present value of the second payment, or of £ 100 to be received two years hence, is that sum in hand, which, being put out to interest, will increase to £ 100 in two years. The like is true of the value of the 3d, 4th, 5th &c. payments ; and the sum of the values of all the payments is the value of the annuity.
“ Let the interest be supposed to be 4 per cent. The sum which, improved at 4 per cent, interest for a year, will produce £ 100 at the end of the year, is the sum which bears the same proportion to £ 100 that £ 100 bears to £ 100 with 4 added to it, that is, to £ 104. Say, then, as £ 104 is to £100, so is £100 to a fourth proportional, which will be 96. 15, or £ 96. 3s. the value of the first payment.
“ Again, the sum which, improved at 4 per cent, for two years, will produce £ 100 at the end of two years, is the sum which, being now put out to interest, will produce in a year that sum which in one year more will produce £ 100; that is, it is the sum that will produce in a year £ 96. 3s.; for it has been just shewn that £96. 3s. will in a year produce £100. Say, then, as 104 is to £ 100, so is £96. 3s., or 96. 15, to a fourth proportional, which will be 92. 45, or £ 92. 9s. The value therefore of the second payment is £ 92. 9s.
“ By proceeding in this method, it will be found that the values of the 3d, 4th, 5th &c. payments are £ 88. 89, £ 85. 48, £ 82. 19, &c. The sum of 10, 20, or 100 of these values, is £ 811, £ 1350, £2450, respectively, or the present value of an annuity of £100 payable for 10, 20, or 100 years. The sum of an infinite number of these values is £ 2500, or the value of a perpetual annuity of £ 100 at 4 per cent.”
In the communication referred to in judge Allen's opinion, judge Smith remarks that the results produced by taking WiggleswortKs table as a guide in respect to the duration of life, and calculating the discount by simple interest, have been so glaringly incorrect, that the table has been often thrown aside under an idea that the error must be in that, whereas the error (he says) is in the mode of calculation. Judge Smith does not question the correctness of the table as a guide in cases generally; but, taking the expectation of life as correct, he considers the true rule to be to calculate the discount by compound interest. He refers to Pike’s Arithmetic, 2d edition enlarged, p. 268. where it is said, “ The purchasing annuities by simple interest is unjust and absurd, which may be easily made to appear by one instance only: the price of an annuity of £ 100 to continue 30 years, discounting at six per cent., will *416 amount to nearly £2000, the interest of which for one year only, exceeds the annuity; would it not therefore be highly absurd to give a sum which would yield me nearly £ 120 yearly forever, for an annuity of £ 100 to continue only 30 years 1” He refers also to the american edition of Nicholson’s British Encyclopedia, title -yvhere it is said, “ The present value of an annuity is that sum which, improved at compound interest, will be sufficient to pay the annuity j” and then proceeds as follows: “ This is the correct rule according to Pike, who, to facilitate calculations, has made out a table (p. 325.) shewing the present worth of an annuity of £ 1 for any number of years from 1 to 40, calculating by compound interest. I have found it very accurate, and will send you herewith an extract of so much of it as gives the present value at 6 per cent., only changing the £ 1 into $ 1, as being more convenient. You will find it marked A. I may also remark that I have seen in lessee’s Arithmetic a table corresponding precisely with this, and the author gives it as the true rule.
“I have endeavoured to test the correctness of these tables, and the principle upon which they are constructed; and I think I can give my views best by supposing a case, and sending you the calculations I have made, for your inspection. Let us suppose then that a widow, having her life estate in dower land worth annually $60, agrees with the reversioner that they will sell out and out, and divide the money by the correct rule; that the land sells for $1000, and it is estimated and agreed that her expectation of life shall be put down at ten years: then, by a fair division of this money, the owner of the life estate ought to have what would he equivalent to $ 60 per annumfor 10 years, and the reversioner ought to have what would be, in cash, a just equivalent for $ 1000 ten years hence. I have made a calculation of the value of the life estate, or rather the annuity for 10 years, discounting by simple interest; and it appears to be $458. 93 3-10 cents. I send it that you may compare it with the others. It is marked B.” [The principle of calculating by compound interest being that approved by the judges of the court of appeals, it is thought unnecessary to publish the table B.]
“I have also made a calculation, taking the discount of compound interest, which I contend is the true rule; and by this the life estate would be of the present value of $441. 60. You will find this calculation marked C.
“If, in dividing the $1000, the.owner of the life estate gets $441. 60, there will be left for the reversioner $558. 40. Let this sum be improved at compound interest for 10 years, to ascertain whether the reversioner will then have his proper sum of $ 1000. It comes out precisely. I send this calculation marked D.
*417 “Let me try this rule hy another test. Suppose the owner of the life estate puts out her $ 441. 60, taking bond for it, and stipulating that the borrower shall annually pay $ 60, to be credited on the bond: let us calculate when the bond would be discharged by such payments. It will be seen by the calculation I send, marked E, that the bond would be discharged precisely at the end of 10 years, and that the owner of the life estate will have received her $ 60 annually for the 10 years. Does it not follow that $ 441. 60 is the true value of the life estate ?
“But let us suppose for a moment that the expectation of life in the case I have been discussing were put down at 30 years, instead of 10 years; then it would be seen by calculation, if made according to the rule of simple interest, that of the $ 1000, the amount of the sale, there would be nothing to give to the owner of the reversion as his share. In fact, there would not be quite enough to make up the share of the owner qf the life estate; The rule of simple interest must therefore, I humbly conceive, be abandoned.”
[A.]
A Table shewing the present worth of an annuity of $1 for any number of years from 1 to 40, at 6 per cent., calculating discount by compound interest.
[[Image here]]
*418 [C.]
Calculation to shew present value of an annuity of $ 60 for 10 years, by discounting at compound interest.
[[Image here]]
$441,601, present value.
By Table A. an annuity of $ 1 for 10 years is 7.36008 60
Multiplied by 60 (the annuity) is equal to $441.60480
Variance only of a cent.
[»•]
Calculation of $ 558.40, reversioner's share, improved at compound interest for 10 years.
[[Image here]]
*419 [E.]
Calculation, supposing $441.60 put to interest, bond taken, and $ 60 paid annually and credited.
[[Image here]]
Calculation of discount by compound interest may be stated in the rule of three, thus :
1st year. As 106 : 100 : : 60 : 56.604
2d year. As 106 : 100 : : 56.604 : 53.40
3d year. As 106 : 100 : : 53.40 : 50.377