*346 March 20.
Judge Coalter.*
This is the first case, that has come before this court under the act of assembly, entitling a widow to dower in a trust estate. It is of great importance, therefore, that, in the first decisions under it, the court should proceed with caution and circumspection.
I think that a fair and sound construction of the act will justify a claim to dower in the case of an equity of redemption in mortgages in fee by the husband, before marriage; which is the case now before the court; and I can at present see no reason why it should not also extend to cases of mortgages in fee after marriage, where the wife unites in the mortgage, and is privily examined.
The cases appear to me entirely similar; so much so, that if the widow is not entitled in the latter case, I cannot perceive how she can be in the former. In England,’ the wife is not entitled to dower in cases of mortgages in fee before marriage, although the husband is to courtesy ; hut, as to mortgages for terms for years, she is entitled, upon keeping down the interest of one-third, or redeeming, by paying one-third ; but, as to the mortgagee, she must pay the whole money, and hold over for the residue.(a) But, courtesy and (lower, being put on the same footing by this act, it is fair to presume that the legislature intended to give dower where the husband has courtesy; and the courts of England seem to lament that it had not been so decided there in the first instance.
If the husband mortgages in fee, before marriage, and never redeems, he has never been seised, during the coverture, so that the legal title to dower never has accrued ; but there is an equity of redemption in him, and which descends to his heir; and in which, agreeably to the above principles, the wife can now claim dower under the act. So, if he is seised during the coverture, and mort *347 gages in fee, liis wife uniting with him, she has parted with her dower, at law, but still there is an equity of re demption in the husband, which, in like manner, descends to his heir 5 and in which, I presume, she may equally claim dower, in equity, under the act aforesaid.
I say, in equity ; because, in neither case can she claim it at law, as it regards the creditor. As it regards the heir, it is possible a court of law, since the act, would not permit hiui to plead the mortgage in fee, though unsatisfied, in bar of dower, as he could have done before j though a court of equity would be open to him, as well against her, as against a tenant by the courtesy, to compel her to keep down the interest, to the extent of her claim $ but whether she would be dowable at law, or not, against the heir, 1 am not to be considered as giving any decided opinion. Doubtless, he may endow her, on her agreeing to keep down the interest of one-third of the debt; hut this she will not be obliged to accept $ for the interest of a third of the debt, may be greater than the rents of a third of the estate, although that estate may sell, on a bill to foreclose, for much more than the debt, inasmuch as lands will frequently, in this country, sell for more money than the profits will pay the interest of. Whether she shall be obliged to join the heir in redeeming, or forfeit her dower, or be let in, after the profits shall have compensated him, may be a question also worthy of consideration, when it arrives : but, as to the creditor, if he is unwilling to receive his interest, or it is not paid, and he comes in to foreclose, he will be entitled to receive the whole of his debt; and if neither the heir nor widow redeems, and the land sells for more than the debt, the excess is the value of the equity of redemption, and she can only be endowed of one-third of that excess.
The decree of the chancellor, seems to consider the right to dower, as a legal one against the creditor, and to place the widow in the same situation, as she would have stood, had the husband redeemed, during the coverture j so that *348 keen mortgaged for its full value, the security of the creditor, by the after marriage of the mortgager» would be diminished as far as the value of the dower. I can see no greater reason, why this should be the case in the instance before us, than if there had been a mortgage to the full value after marriage, she joining and being privily examined. Suppose she had been defendant in this suit, could she have claimed to have her dower laid off, and the residue sold l I apprehend the mortgagee could not have been compelled to sell in parcels, which, especially in coal-pits, might greatly diminish the value of his security, and perhaps put his debt in danger. But, if he could have been paid in this way, could the heir be thus deprived of his interest in the equity of redemption ? The two-thirds may only sell for enough to pay the debt, and sell too at a great sacrifice, in consequence of this severance of the property.
The equity of redemption was all that was in the husband : she and the heir stand in his shoes, and are both entitled under him, or rather the heir is entitled under him, and she under the heir, and neither can take all. They not only claim through him, but cannot take a greater in= tei’est or different estate, than that which he held. It could not be the intention of the law, to change the nature of the estate, so as to vest a legal title in her, to the prejudice of the creditor, and thereby, to work a change in the nature of his security. The husband had his courtesy before the act in equity, and on terms of redemption. He surely does not take a different kind of interest by virtue of this act, than he did before; and yet the act applies as well to courtesy, as dower, and its evident object was to put both on tbe same footing.
The claim, then, is only an equitable one, at least as it regards the creditor, and must be subject to the principles regulating courts of equity. If she parts with her dower by joining in a mortgage after marriage, leaving only an equity in her husband, and which enures to her under the *349 act, it cannot be said that it enures to her as a legal estafe, which she is entitled to assert without redeeming; otherwise, her joining in the mortgage would pass nothing. Surely in such case, she only has a right to redeem. Whether she would also be obliged to redeem a subsequent mortgage, unless she also united in that mortgage, so as to bar her equity, will also be a question worthy of consideration, whenever it shall arise. On the whole, I think it must be manifest, that her interest in the case before us, as to the creditor and the purchaser, under the decree in question, is only an equitable one. Had the creditor, instead of foreclosing, brought his ejectment and got possession, must she not have come to equity to redeem ?
.1 have considerable doubts, whether it was necessary to make the widow a party, under the circumstances of Ibis case, to the suit, to foreclose the mortgage, and under which, the appellee claims. She is clearly, I think, not entitled to any thing more, than she would have been, had this been a mortgage after marriage, she uniting and being privily examined. In such case, or where the mortgage was before marriage, suppose the bill to foreclose, is brought in the life-time of the husband, must she be a party ? Her husband in that case, has an equity, and so lias slie, as before stated under the act. It may be said though, that this right is contingent, during the life of the husband; but, if she was a party, might not a court of equity, on his failure to redeem, very properly provide a settlement for her, equal to one-third of the balance of the purchase money in case she survived ? And if this was not done, might not mortgages for small sums be resorted to, in order to defeat dower lights; the wife during coverture not having it in her power to redeem ? And would this failure to make the wife a party in such case, subject the purchaser to her claim for dower, in case of her surviving her husband ? Is she more a privy in that case, than in this? But, in the case put, I believe it never has been held necessary since the act, to make the wife a party, *350 ft mav, however, be well worthy of consideration, how far it may be the duty of courts in such case as that, or of this, if they are alike in that respect, to direct the balance of the purchase money, to be paid into court, and to enquire whether there be a wife entitled, and make provision accordingly. This I merely throw out for consideration and caution, without intending to be understood as giving any opinion upon it.
It may he, that when her right becomes vested, by the death of her husband, although the heir, who represents the inheritance, is a party, she ought to be so too, as she may wish to redeem, if he does not; and I should he strongly inclined to think so, provided, she had made any assertion of her rights; if she had claimed dower of the heir, and had got possession, and paid her third of the interest, so as to shew her election and willingness to claim her dower notwithstanding the mortgage. But, when the debt was large, as in this case, where it would not have been her interest to redeem, even by paying one-third, much less the whole, the heirs being unable to pay their part, and this in coal-pits, requiring great capital to make them profitable; and when, so far from any semblance or wish of this kind, she had permitted the guardian of the heirs to rent out the property for their benefit, as appeared in the suit to foreclose, the irregularity, if any, in not making her a party, is not so great. The court and parties, without much blame, may well have glided into it; but, it is not every irregularity in the proceedings, that will affect an innocent purchaser under a decree. In the case in Schoal. and Lef.,(b) cited by the bar, the chancellor, speaking of the case in 9 Ves.,(c) says : That in that case, there were not proper parties, and he supposes the length of time weighed with Lord Eldon in that case. Besides, in this case, the heirs who represented the inheritance were parties, and unable to redeem. *351 The inheritance is gone, and the decree cannot he disturbed as to tiiern. She cannot now redeem by paying the whole debt so as to take the fee, which is vested in the purchaser, to herself. She does not offer to redeem, as I understand, by paying one-third of the debt and interest, which she would lose if she died the next day, and be let into the third of the coal-pits for life only.
Admitting, however, that it would have been most regular to have made her a party, I shall consider whether, under all the circumstances of this case, she has now a right to come in for the purposes of redeeming, in any way whatever, as it regards the appellant.
It appears, that just before the death of William Ronald, her husband, he was in possession of, and working these coal-pits ; and that soon after his death, they were demised by the guardian of her children for three years. She could not be ignorant, then, of the rights of her husband and children in that property, or that Bentley, the administrator, was also their guardian, and had made a lease of the property as aforesaid. If she herself had rights ih the property, which she intended to assert, she must also be presumed to have known the nature of those rights. It is not alleged, in the original bill, that she was ignorant of her rights, or of the proceedings under the mortgage, or that she was able to redeem the mortgage, or that it could have been redeemed out of the personal estate. All these allegations, so far as they are made, are after-thoughts, and come out in the amended bill; but, even in that, she does not allege ignorance of her rights, if such ignorance would avail her.
Iler husband died in February, 1793, possessed, not only of this property, but of three plantations in i V.vha tan, where she has resided. Whether she has been endowed of the whole real estate, including the coal-pits, out of these plantations, or could have been, or now can be so endowed, does not appear. This suit was instituted in October, 1809, upwards of sixteen years after her *352 rISMs accrued 5 during all which time, she neither asserted any claim to this property, nor even made known her existence; of both which, the appellant was ignorant, as his answer, which is responsive to the bill in this particular, proves. For many years, too, after the sale of this land, under the decree, and the purchase by the appellant, and another, the residue of the purchase money, of about 1663?., with interest, after paying the mortgage debt of about 1446?., was unpaid by the purchasers to the guardian. He had taken a deed of trust on the property, to secure it. This deed of trust was finally enforced, after ninety days public notice, the property purchased by the appellant, and the money paid over to the guardian. She does not pretend ignorance of these facts; They are stated in her amended bill, without such pretence ; and now, when it is stated that the guardian, who received this fund, is insolvent, she asserts her claim. Suppose some one else had purchased this land, under this deed of trust, and had got the legal title in fee, as the appellant has, with what face could she have come into a court of equity with such á claim ?
Whether this fund has been,applied to pay debts of the estate, so as to exonerate slaves, or other personal property, of which she may be in the enjoyment, or has been applied by the guardian, otherwise for the benefit of his wards, or has been embezzled by him, does not appear. No accounts are asked for of this subject; or rather, being first asked for, are finally abandoned ; and I have, therefore, a right to presume, notwithstanding the alleged insolvency of the guardian, that they have been in some way applied to the benefit of those interested, perhaps to the exclusive benefit of the heirs, without giving her the proportion to which she may have been entitled. An em-, bezzlement of them by him is not charged. If he has not accounted for that fund, those entitled thereto can resort to his bond. The appellant, I presume, has no right to sue on it.
*353 As to her power, or willingness to redeem, at the time of the sale, there is no such allegation in the original bill, either out of the personal fund, or her separate estate. The reverse is manifest. The administrator says, he had fully administered the personal fund, and no separate estate is alleged or shewn to he in her. She lies by, in hopes that the rents will redeem for her; and does not now offer to redeem, except by first applying them to that purpose. These rents too, arise, not from the cultivation of the soil, but from the profits of coal-pits, necessarily carried on at great expense and risque, from which, lew, I believe, have escaped without injury; and no oiler to join, either in those expenses or risques; and, indeed, from what appears in the record, may have arisen from new pits, opened since her husband’s death. If she had been possessed of a separate estate to redeem with, could any one suppose, that a widow, comfortably settled at a distance, would have invested it in coal-pits? Had she been made a defendant, she could only have preserved her claim by the same means, by which her husband could have preserved his | that is, by paying the whole debt to the creditor, who would not have been bound to receive one-third from her.
The first bill is filed on the supposition, that the mortgage was made after marriage, and claims a third of the pits and rents, or one-third of the purchase money, with interest. It turns out, though, to be a mortgage before marriage; and in her amended bill, she claims a right to redeem ; not being a party to the bill, to foreclose. She says, she had no actual notice of that suit and decree, which she says was hurried, and taken up out of turn, &c. But, she does not say, that she was ignorant of the sale under that decree; nor can it be presumed, that she was long ignorant of it, or that she had made no enquiry as to what had become of this portion of her husband’s estate | nor can she be presumed to have been long ignorant of the aura secured, and finally paid to the guardian as aforesaid.
*354 On the whole, therefore, although her right to dower in this case is given to her by law, and so far may be considered a legal right, yet it is a right of such a nature, that, as to the appellant, it could only be asserted in a court of equity, under the power thus to permit redemption, after the forfeiture of the legal estate at law; and this right to an equitable interposition, she may waive or abandon, as I think she has done in this case. And, even if her rights are of a higher nature, in as much as she must come into equity, to assert and have the benefit of those rights, it might well be questioned, whether by standing by, as it, were, and seeing the legal title pass to an innocent purchaser, she is not to be considered, as to him, as guilty of a fraud and concealment, which would justify a court of equity, in refusing its aid.
I.am, therefore, for reversing the decree, and dismissing the bill as to the appellant.
Judges Cabexx. and Brooke concurred, and the decree was reversed.

 Pow. on Mort. 286-7 ; 2 P. Wins. 632.

 Judge Green did not sit in this case.

 2 Schoal. and Lef. 565.

 9 Ves., Loyd vs. Johns.