# CHARLESTON.

## BANK v. DUDLEY *et als.*

### Submitted May 4, 1915.   Decided May 25, 1915.

1. DOWER—*Relinquishment—Execution of Deed of Trust—Effect.*

   By uniting with her husband in a deed of trust to secure the payment of money borrowed by him, the wife relinquishes her dower in the land only for the purposes of the trust and in favor of the secured creditor, not the husband, nor his general creditors, nor his heirs.   (p. 337).

2. SAME—*Right—Deed of Trust—Husband's Equity of Redemption.*

   If the husband still owning the equity of redemption, dies, the widow's dower therein becomes consummate, and she is entitled to full dower in the land, as against everybody except the trust lien creditor and persons holding under him.   (p. 337).

3. SAME—*Right of Widow—Trust Lien Debt—Payment.*

   As against the heirs, distributees and creditors other than the lien creditor, she is entitled to have the personal property applied pro rata on the lien debt with all the others of its class under the statute classifying debts of decedents for purposes of administration, and the balance of that debt paid out of the proceeds of the sale of the particular land on which the lien is, sold subject to dower in the whole thereof, if such proceeds are sufficient to pay it. (p. 337).

4. REDEMPTION—*Right of Widow—Trust Lien.*

*Quaere:* In case of insufficiency of such proceeds to pay such balance, may the widow redeem as to so much of the debt as remains after application of such proceeds to such balance; and, having done so, is she a creditor, to the extent of the redemption money, with right to share with general creditors, in the distribution of the proceeds of other real estate of which the husband died seized? (p. 337).

5. DOWER—*Rights of Widow—Incumbered Property—Surplus—Application of Statute.*

Sec. 3, ch. 65, Code, serial sec. 3651, applies only to land bona fide sold in the lifetime of the husband, to satisfy a lien thereon paramount to the right of dower, and does not define or limit the right of the widow when the husband has died owning the equity of redemption in land so encumbered. (p. 337).

(MILLER, JUDGE, absent.)

(WILLIAMS, JUDGE, dissenting in part.)

Appeal from Circuit Court, Wood County.

Suit by the Commercial Banking & Trust Company, executors, etc., against Sallie J. Dudley and others. From decrees for plaintiff, defendants appeal.

*Reversed and remanded.*

*Dave D. Johnson* and *Merrick & Smith,* for appellants.

*Wm. Beard* and *J. W. Vandervort,* for appellee.

POFFENBARGER, JUDGE:

The decrees complained of on this appeal were made and entered in a suit brought by the executor of the will of J. W. Dudley, for the sale of the real estate of which he died seized and possessed and settlement and distribution of his estate among the devisees and legatees, after the payment of his debts, the personal property being insufficient to pay the indebtedness, and the will having ordered the sale of part of the real estate. The widow of the testator is the appellant and she complains of the refusal of the court to permit assignment to her, of her dower in kind, in a tract of about ten acres of land in the city of Parkersburg, known as the home place, on which the mansion house of the testator is situated, apportionment to her out of the proceeds of the sale of said

real estate, of a smaller sum than she thinks she is entitled to, as and for the gross sum in lieu of dower allowed her by law, in case it shall be held that the land was properly sold, and the appointment of a receiver to take charge of said real estate and oust her from the possession of said mansion house.

No provision for the widow was made in the will by Dudley, wherefore she renounced the provisions thereof, in so far as they affect her, and claimed her dower in the real estate of which he died seized. This consisted of a tract of land in Wirt County, some parcels of land in Wood County, the home place in the city of Parkersburg and another piece of city property. Knowing himself to be heavily indebted, the testator directed his executor to sell all of his real and personal property, except the home place, and convert the same into cash, which, so far as necessary, was to be applied to the discharge of his indebtedness. Part of the home place, about three and one-half acres, was used for the purposes of a partnership business conducted by the testator and one of his sons, C. P. Dudley, the firm name being J. W. Dudley and Son. They were florists and their greenhouses were located on that portion of the home place. The whole of the home place was incumbered by a debt of $10,000.00, secured by a deed of trust in which the wife had joined. This debt, with its interest, was ascertained in this cause to be $11,823.33, and the unsecured personal debts of Dudley were found to be $13,589.30, making his entire indebtedness $25,412.62. The stipulation filed for the purpose of the appeal shows the existence of a firm debt amounting to $3,064.58, which, added to the personal indebtedness of J. W. Dudley, makes $28,477.21, as the aggregate of personal and firm indebtedness for which the estate is liable.

As to all the real estate except the home place, the widow elected to take her dower in money, but asserted her right to have dower in kind in the home place, so assigned as to include the mansion house, if it should be possible, in view of the indebtedness of the estate, so to allow it to her.

The real estate other than the home place was sold separately for the following amounts, respectively: The Wirt County land $2,218.83, the First Street property in Parkersburg $915.00, and parcels in Wood County, other than the

home place, $1,673.00. Out of the aggregate of this amount, the widow was entitled to about $960.00, on account of her dower, leaving about $3,850.00 to apply on the indebtedness. At the time the commissioner made up his report, there was in the hands of the executor $1,869.38 which had been derived from the personal estate. Neither then, nor at the date of the sale, nor at this time, so far as the record shows, had the financial condition of the firm, J. W. Dudley and Son, been ascertained, and what amount coming from that source will be available for relief of the real estate is not known. But, under a decree of sale, made and entered on the 10th day of June 1913, providing for the sale of the firm property and the home place, the former sold for the sum of $22,850.00 and the three and one-half acres of the home place, covered by the greenhouses of the firm, for $9,500.00, a total of $32,350.00. At that sale, the widow offered $4,000.00 for the home place, but her bid was rejected, and, it was subsequently sold to Lysander Dudley and William Dudley, sons of the testator and beneficiaries of his will, for the sum of $7,000.00.

In view of these facts and upon the assumption of non-existence of firm indebtedness, other than the $3,064.58 to which reference has been made, the widow filed a petition in which she again prayed assignment of her dower in kind in the home place. In it, she set forth a calculation, based upon the facts herein stated and others claimed, by which she endeavors to show sufficient assets, exclusive of the proceeds of the six and one-half acres, to pay all of the indebtedness and thus make possible the assignment of her dower. The proceeds of the firm assets, less the firm debt of $3,064.58, amount to $19,785.32, one-half of which, $9,897.76, would be available for the purpose, provided there are no other firm debts. To this must be added the proceeds of the three and one-half acres, $9,500.00 and the $3,850.00, derived from the sale of other real estate, after deduction of the dower interest therein. This would make something over $23,000.00 and leave for expenses of the suit the fund in the hands of the executor, derived from the personal estate, amounting to about $1,700.00. The petition further claims two of the debts amounting to $1,215.59 had been paid, that L. Dudley is liable for nearly $900.00, part of two of the other debts,

William Dudley for $1,194.25, part of another debt, and Albert G. Dudley for $605.61, part of another, and that still other debts, amounting to about $500.00, will ultimately be paid by other solvent persons, so that the indebtedness will be reduced to about $21,000.00. The court refused the relief prayed for in the petition. Later, the commissioners reported that they had been offered $3,255.00 by the widow, for three lots, including the mansion house, and $3,575.00, by another party, for the residue of the six and one-half acres, and that they had sold both to Lysander Dudley and William Dudley for the sum of $7,000.00. Thereupon Mrs. Dudley excepted to the report of the sale, assigning, as grounds for her exceptions, error in decreeing the sale, without first having set off her dower to her, refusal of the court to assign her dower or provide for the payment of a sum in gross in lieu thereof, before ordering the sale. But the court overruled her exceptions and confirmed the sale of the six and one-half acres for $7,000.00 and also the sale of the other parcels of land.

In a later decree, the basis of ascertainment of the gross sum to be paid to the widow, on account of her dower in the home place, was stated as follows: "The costs of suit and expenses of sale shall be first provided for and paid and the residue of the proceeds of the real and personal estate of J. W. Dudley except from said home place, shall be paid pro rata on all the debts of J. W. Dudley including the mortgage debt aforesaid herein before decreed a lien on said 10 acres. The residue of said mortgage debt shall be paid out of the proceeds from the sale of said 10 acres and the widow shall have her dower in cash in the residue of the proceeds arising from sale of said 10 acres after said mortgage debt has been fully paid."

The delay incident to a full and complete settlement of the firm business and distribution of its assets is urged as justification of the action of the court in ordering the sale of the real estate, without having previously caused the dower to be assigned.

Sale of all of the real estate except the home place, whether the personal estate was sufficient to pay the indebtedness or not, was proper, because the will directed it to be sold. The

facts disclosed by the record, at the date of the decree of sale
of the home place, seemed to demand sale thereof, for it was
apparent that the proceeds of the personal estate and of the
other real estate were insufficietn to pay the debts. But it
was not apparent, or rather not certain, that the sale of the
home place, free from the widow's dower was necessary, for
it could not be known, at that time, what the three and one-
half acres would bring or what sum would be derived from
the firm assets. Nor could it be determined in advance what
the remaining six and one-half acres would bring, when sold
subject to dower or free from dower. The delay incident to
the realization of additional money from the firm assets is
relied upon as another ground of justification of the sale of
the land free from dower.

As to the widow's right in land incumbered by mortgage
or deed of trust, by the joint action of the husband and her-
self, the decisions of this court and of the Virginia court,
before the separation of the state, are somewhat indefinite.
The exact question presented here seems never to have been
passed upon. In *Heth* v. *Cocke and Wife,* 1 Rand. 344, the
mortgaged land had been sold, the debt satisfied out of the
proceeds and the residue paid to the guardian of the infant
children of the deceased mortgagor, before the widow made
any attempt to assert her claim to dower in the land. Having
ascertained and determined that her dower right had attached
to the equity of redemption only, the court denied her relief,
on the ground of waiver by delay and non-assertion of her
claim, which was declared to be merely an equitable one. The
opinion of the court delivered by Coalter, Judge, concludes
as follows: "On the whole, therefore, although her right to
dower in this case is given to her by law, and so far may be
considered a legal right, yet it is a right of such a nature, that,
as to the appellant, it could only be asserted in a court of
equity, under the power thus to permit redemption, after
the forfeiture of the legal estate at law; and this right to an
equitable interposition, she may waive or abandon, as I think
she has done in this case." In *Wilson et al.* v. *Davisson,* 2
Rob. 384, the widow claimed, against the purchaser, dower in
the land which had been sold to satisfy a vendor's lien for
purchase money, and the court denied her right to dower and

also her right to charge the land, in his hands, with the value thereof. The ruling in that case was afterwards modified by statute so as to permit the widow to charge the lands in the hands of the purchaser with the value of her dower in the surplus of the proceeds of the sale. Our statute also subordinates dower to claims for purchase money. Code, ch. 65 sec. 31; *Roush* v. *Miller,* 39 W. Va. 638; *Blair* v. *Mounts,* 41 W. Va. 706. While that statute applies in terms to land bona fide sold in the life time of the husband to satisfy a lien or incumbrance thereon, created by a deed in which the wife has united, or for purchase money thereof, whether she united or not, or created before the marriage or otherwise paramount to her claim, the same rule governs, in the case of a purchase money lien, though the land is not sold in the life time of the husband. *Roush* v. *Miller,* cited. *Gilliam* v. *Moore,* 4 Leigh 30; *Martin* v. *Smith,* 25 W. Va. 580; *Sinnett* v. *Cralle,* 4 W. Va. 600.

A purchase money lien is readily distinguishable from one created to secure an ordinary debt, and the courts do not hesitate to emphasize the grounds of distinction. To allow a wife dower in land that has not been paid for to the exclusion of the lien for purchase money would be flagrantly inequitable and unjust. Therefore the law denies her participation except as to the surplus of the proceeds of sale, when the land has been sold or is about to be sold. The purchase money debt directly and obviously represents the land, or a portion of it, and stands in the place of the land. To the extent thereof, the vendee lacks beneficial ownership. This doctrine exists independently of the statute and was asserted before it was passed. But, as to other debts, the rule differs in conformity with the altered circumstances.

In the interest of perspicuity, the purpose and effect of this statute will be defined, before the inquiry here involved proceeds further. Its own terms import inapplicability under the circumstances here disclosed. It creates and defines the right of the widow in land sold in the lifetime of her husband, while her dower is contingent and her right inchoate and unvested. Not a word in it suggests intent to make it apply to a right of dower, vested and consummated by the death of the husband. The two situations are redically and vitally

different. When a sale is made in the lifetime of the husband, whether in the exercise of a power of sale in a mortgage or deed of trust, or under a decree enforcing the lien thereof or a vendors lien, it cannot be known whether the wife will outlive the husband and become entitled to dower. At such time, she has no absolute right of dower in either the legal or the equitable estate and may never have. The sale destroys the husband's possession and title and the land passes into the hands of a purchaser whose title may or may not be complete and unencumbered at the death of the husband. Moreover the sale contemplated is one made to satisfy a lien paramount to the right of dower, not judgment liens. Even though the sale be a judicial one, there may be no occasion for a settlement of the debtor's estate. Hence it does not necessarily involve the application of principles governing the decree in the case if a sale made in the course of the settlement of the estate of a decedent.

The statute had its origin in legislative opinion as to what is equitable and just between the widow of husband whose land was sold in his life time, to satisfy a lien paramount to her right, and the purchaser at such sale, and was passed only to effectuate that view, not to determine or define her right of consummate dower, in the case of a sale made, among other things, to satisfy such lien, after his death. The decision in *Wilson et al.* v. *Davisson,* 2 Rob. 384, denied the widow any right at all against the purchaser of the husband's lands sold in his life time to satisfy a vendor's lien. Then the Virginia General Assembly passed the statute, declaring that, in such case as well as any other in which a sale should be made in the lifetime of the husband, to satisfy any lien paramount to the right of dower, the widow should have dower in the surplus, the excess of the proceeds of the sale over the lien debt. This was the object of the statute and, under a well settled rule of construction, a statute does not extend or operate beyond the accomplishment of the purpose which gave it birth, in this instance, remedy of the defect in then existing law, working out inequitable results under given circumstances. Such was the view thus expressed by Judge Staples, in *Robinson* v. *Shacklett,* 29 Gratt., 99: ''The object of the statute seems to be to provide for a case in which the

land is sold in the lifetime of the husband, when the wife has a mere contingent right of dower." And it has been emphasized in *Holden v. Boggess,* 20 W. Va. 62 and *Russell v. Caywood,* 54 W. Va. 241.

Laying this statute out of view as being inapplicable and returning to the principal inquiry, the difference between a purchase money lien and a lien for a debt upon a consideration foreign to the purchase of the land on which it is secured must be observed. In the former case dower is deemed never to have attached to anything except the excess of the value of the land above the unpaid purchase money debt. *Wilson et al. v. Davisson,* 2 Rob. 384; *Hunter v. Hunter,* 10 W. Va. 321; *Martin v. Smith,* 25 W. Va. 580.

Money borrowed by the husband, for general purposes and secured upon the land, does not in any sense represent the land or stand in its place. Neither he nor the creditor expects the money to be paid out of the land. The lien, in such case, is no more than a security. In such case, the inchoate right of dower attaches to the land in its entirety and is later conditionally released. Of such a debt, the court said in *Heth v. Cocke and wife,* cited: "If she parts with her dower by joining in a mortgage after marriage, leaving only an equity in her husband, and which enures to her under the act, it cannot be said that it enures to her as a legal estate, which she is entitled to assert without redeeming; otherwise, her joining in the mortgage would pass nothing. Surely in such case, she only has a right to redeem." Again the court said: "It is not alleged in the original bill, that she was ignorant of her rights, or of the proceedings under the mortgage, or that she was able to redeem the mortgage, or that it could have been redeemed out of the personal estate." The land had been sold and the widow was proceeding against the purchaser. She had not set up any of her equities in the suit. These observations tentatively indicate opinion on the part of the court, that the widow is entitled to her dower in the mortgaged land, if the personal estate of the husband is sufficient to pay the debt.

Nothing inconsistent with this intimation is found in *Land v. Shipp,* 100 Va. 337, *Wilson v. Branch,* 77 Va. 65, or *Hoy v. Varner,* 100 Va. 600, disposing of questions somewhat related

to the inquiry we have, and extensively relied upon in the argument for the appellee. The discussion in the opinions in all of them proceeds upon the assumption of necessity of sale of the mortgaged property, free from dower, to satisfy the mortgage debt, or probability of such necessity. *Land* v. *Shipp* decides no more than that the purchaser of the equity of redemption is entitled to protection against the claim of dower, by subrogation to the extent of the encumbrance on the land, which is superior to the right of dower, so as to limit that right to the surplus. *Wilson* v. *Branch* affirms the right of the widow to have her dower in kind, if practicable, notwithstanding her joinder in a deed of trust securing a debt thereon. *Hoy* v. *Varner* makes the widow contribute to the redemption of the land by the heirs, when she has united in the execution of the deed securing the debt, as a condition of her right to dower in kind, when such debt cannot be paid out of the husband's estate. The debts having priority over the right of dower had been practically paid with the proceeds of the sale of part of the land on which there were liens and insurance money belonging, not to the husband's estate at all, but to the widow and children. Under such circumstances, the widow was clearly not dowable in kind of the whole of the tract of land, nor of any part of it, and the court so decided. But for the insurance money, sale of the entire property to pay the superior lien debts would have been necessary. Comparison of these cases with our own decisions in *Laidley* v. *Kline,* 8 W. Va. 218, and *Martin* v. *Smith,* 25 W. Va. 580, reveals nothing more than the application of a broad general principle, yielding numerous equities growing out of the peculiar circumstances of the individual cases, but consistent, nevertheless, with legal right.

All of the decisions of this court and of the Virginia court concede to the widow the right to dower in kind in land encumbered by deeds in which she has united, when it is practicable to assign it to her, and a decree denying it is erroneous. Is it legally practicable when the mortgage debt can be fully paid out of the personal estate of the husband and the proceeds of the sale of the land subject to dower? To this question, our decisions seem to give no definite answer. An affirmative answer seems to accord with an inference aris-

ing from what the court said in *Hoy* v. *Varner*, cited. Courts
of other states have so held. *Mathewson* v. *Smith*, 1 Angell.
(R. I.) 22, 25; *Campbell* v. *Murphy*, 2 Jones Eq. (N. C.), 357;
*Kling* v. *Ballentine*, 40 O. St. 391; *Henegan* v. *Harllee*, 10
Rich. Eq. (S. C.) 285. A suggested relation of suretyship
between the husband and wife is not at all essential to this
conclusion. She is not liable for his debt as surety or other-
wise. She merely releases her contingent right of dower in
favor of the mortgagee, not general creditors, nor the husband,
nor his heirs. It is his debt, primarily payable out of his
estate. As she is not liable for any of his debts, her equity
to have the mortgage debt paid out of his estate, in relief of
her dower, is a strong and manifest one. She relinquishes
her dower as to a particular debt of her husband, not all of
them. Both she and the creditor expect him to pay it. If
he does pay it, neither his general creditors nor his prospec-
tive heirs are legally injured. If it is paid out of his estate,
after his death, there is no legal injury to them, for their
rights are limited to what he legally and equitably owned at
the time of his death. How a general creditor or heir can
claim any right under the mortgage or deed of trust executed
solely for the benefit and protection of the secured creditor
has never been demonstrated. How they equitably obtain the
benefit of the relinquishment of dower made for his sole bene-
fit, it is impossible to perceive. That creditors other than those
secured by the deed of trust in which the wife united do not
get the benefit of her release, is manifest. In *Barbour* v.
*Tompkins*, 31 W. Va. 410, this court so held. There was one
such lien on the land besides judgment liens, both prior and
subsequent, and the court declared the trust-lien creditor had
the first and only lien on the contingent right of dower, and
ordered the land sold subject to the dower, if, sold in that
way, it would bring enough to pay the trust lien. How does
the death of the husband, before sale, add anything to the
rights of the creditors as against the widow? It makes his
real estate assets for the payment of his debts, so far as may
be necessary, but only his not the widow's. After the dis-
charge of liens, the proceeds are to be applied pro rata on
general debts, and the rights of heirs thus subordinated to
those of creditors. This being true, how is it possible to say

the heir has an equity against the widow by reason of the release of dower for the purpose of a certain debt? The general creditor has none and the right of the heir is inferior to his.

Authorities in other jurisdictions in which the question now under consideration and others more or less similar have arisen, disclose general principles controling the inquiry in some of its bearings. The widow is dowable in land subject to a mortgage superior to her right, against all persons except the mortgagee and persons claiming under him. This proposition is accepted everywhere as being fundamental and basic. *Hastings* v. *Stevens,* 9 Foster, 29 N. H., 564; *Cass* v. *Martin,* 6 N. H. 25; *Rossiter* v. *Cosset,* 15 N. H. 38; *Barker* v. *Barker,* 17 Mass. 504; *Snow* v. *Stevens,* 15 Mass. 278; *Bolton* v. *Bullard,* 13 Mass. 227; *Wheeler* v. *Morris,* 2 Bosworth (N. Y.) 524; *Titus* v. *Neilson,* 5 Johns, C. R. 452; *Hatch* v. *Palmer,* 58 Me. 271. It is easy to perceive that the heir may obtain the benefit of the mortgage by purchase thereof, or, what amounts to the same thing, payment of the debt and taking an assignment of the mortgage, or by virtue of the doctrine of subrogation, and thus hold under it. In such cases, his right would prevail over the widow's dower, but it would be derived from the mortgage, not from his relation to the estate as heir. To obtain her dower in the land, as contradistinguished from a gross sum in lieu of dower, she would have to redeem wholly or partially as the equity of the case might be. *Copp* v. *Hersey,* 31 N. H. 317; *Swaine* v. *Perine,* 5 Johns C. R. 482; *Titus* v. *Neilson, Id.* 452; *Mills* v. *Vav Vorhis,* 23 Barb. (N. Y.) 125; *Woods* v. *Wallace,* 30 N. H. 348; *Pynchon* v. *Lester,* 6 Gray, 314; *Niles* v. *Nye,* 13 Met. (Mass.) 135. Similarly the widow may herself become owner of the mortgage and so bring about an anomalous situation giving rise to equities.

· Bearing this in mind, the requirement or suggestion of redemption by the widow, as a condition precedent to the right of dower, found in some of the reported cases, is to be regarded as indicative of a burden in favor of the mortgagee or some person holding under the mortgage, not as one in favor of the heir. In *Heth* v. *Cocke,* 1 Rand. 344, the purchaser held under or by virtue of the mortgage, the land having been sold under it, wherefore the court suggested a duty to redeem.

If the mortgage is extinguished by payment out of the husband's estate before or after his death, the widow is entitled to full dower in the land. *Hinds* v. *Ballow*, 44 N. H. 619; *King* v. *King*, 100 Mass. 224. Payment by an assignee in insolvency out of the debtor's estate has been deemed an extinguishment of the mortgage, letting in the claim of dower. *Atkinson* v. *Stewart*, 46 Mo. 510. The contrary was apparently, but not actually, held in *Sargeant* v. *Fuller*, 105 Mass. 119.

In most of the cases, the question settled upon these general principles arose, not in the judicial ascertainment of rights in the course of administration, but out of claims to dower in land, set up against the purchasers after sales, or against the heirs after they had paid the mortgage debts out of their own funds, not money derived from the estates of the decedents. In all of them, the lands had actually been sold or sales thereof free of dower, to satisfy the mortgage debts, were necessary. Here the estate will pay practically, if not quite, all of the debts and may be sufficient to pay all, without depriving the widow of any of her dower in the home place.

The general rule, giving the widow dower against everybody except the mortgagee and those holding under him, literally applied, would require the mortgage debt to be paid out of the husband's estate, even though to do so would exhaust the other estate real and personal, and leave nothing for either heirs or creditors. But it does not seem to have been carried to that extent. An important qualification is the limitation of the rule to the subject matter of the mortgage, the land on which it is. The widow's right prevails over all claims against that land, except those founded on the mortgage, but not over debts against other lands of the husband. If he owes other debts and owns other land, the dower right does not go so far as to withdraw from the reach of the other creditors the other property to which the law gives them resort for payment. Thus in *Sargeant* v. *Fuller*, 105 Mass. 119, the general creditors of the insolvent debtor had rights respecting his property other than that under mortgage, by virtue of the deed of assignment, which the court upheld against the claim for dower. Payment of all the debts, including the one secured by the mortgage, out of the proceeds of all of the debtor's property, including that under

the mortgage did not extinguish the mortgage, so as to render the widow dowable of the mortgaged land in the hands of the purchaser. He held under and by virtue of the mortgage. Had her claim been asserted before sale and in an equity suit in which the sale might have been decreed, her priority of right would no doubt have been limited to the particular piece of property on which the mortgage was, for the other property was not hers. It belonged to the husband's estate and was subject to his debts. She had a moral right to discharge of his mortgage debt out of his estate but no legal right thereto. In a sense, she was equitably his creditor, respecting the other property, but certainly had no higher right or equity as to it than other creditors. It was inferior because theirs was legal and hers only equitable. Besides, she had permitted the land to be sold under the mortgage and then sought dower as if there never had been a mortgage on the property.

Conversely, the mortgage debt is a charge against the estate generally. As to the personal property, it is a debt equal in dignity with the unsecured debts. The widow's equity respecting the mortgaged land is as strong as the equities of general creditors, wherefore they cannot require payment of the whole mortgage debt out of the mortgaged property, so as to make the personal property, or a larger part thereof than would otherwise come to them, applicable to the payment of their debts. It is applicable to all debts alike, the mortgage debt along with the others. *Laidley* v. *Kline,* 8 W. Va. 218. No ground upon which this order of distribution of the personal estate can be varied to the prejudice of the widow has been suggested, nor is any perceived.

Assets will not be marshaled to the detriment of any person. The marshaling of assets is a purely equitable doctrine. Under it, the rights of parties are limited and varied only so far as is practicable without injury in a material sense. Only technical, legal rights are required to yield. *McCrum* v. *Lee,* 38 W. Va. 583; *Ball* v. *Setzer,* 33 W. Va. 444; *Bank* v. *Wilson,* 25 W. Va. 242; *Wiley* v. *Mahood,* 10 W. Va. 207.

The general principles here adverted to were applied in *Creecy* v. *Pearce,* 69 N. C. 67; the syllabus in which reads: "The widow of a mortgagor, as against the legatees and next

of kin as well as against the heirs and devisees of her deceased husband, has a right to have the mortgaged land exonerated from the mortgage debts, but as against his other creditors she has no such right. As to them, she has only the right to have the two-thirds of the land not embraced in the dower, and the reversion of the dower sold, and the proceeds applied to the payment of the mortgage debt, and to have the residue of that debt, if any, paid ratably with the other debts of the deceased out of the personal assets, and if there still be any part of the mortgage debt unpaid, it shall be a charge on the dower''. Except in one particular, the conclusion embodied in this quotation accords with the views indicated throughout this discussion, namely, the basis on which the lien debt participates in the distribution of the personal property. Judge Pearson adopted that shown in the quotation, under the impression that each method would produce the same result. It might as regards the creditors, but clearly does not as regards the widow; for, if the personal property is prorated upon the entire lien debt, the proceeds of the mortgaged land sold subject to dower will be much more likely to pay the mortgage debt.

The widow is entitled to dower in kind in the ten acre tract of land, called the home place, to be assigned out of the six and one half acres thereof, herein described, so as to include the mansion house, if practicable, if, after the application of the proceeds of the personal estate pro rata upon all of the debts including the debt constituting a trust deed lien thereon, said lien debt can be paid out of the proceeds of the sale of said ten acre lot, subject to the dower so assigned. If not, it should be sold free of the dower and the lien debt so reduced paid out of the proceeds thereof, if sufficient, and dower allowed the widow in the surplus, if any.

Unless it was apparent that the home place could not be sold subject to dower for a sum sufficient to pay the lien debt so reduced, or that unreasonable delay would be occasioned by the settlement of the personal estate, the dower should have been assigned, as above indicated, before the sale was ordered. and the decree should have provided for a test by the offer of sale as to the possibility of realizing a sufficient sum by a sale subject to dower. This was not done and it did not other-

wise appear that a sufficient sum could not be raised by a sale so made. Nor does it appear that the settlement of the personal estate including the testator's interest in the firm assets would have occasioned unreasonable delay. No part of the record indicating it has been brought up. Hence the sale of the six and one-half acres of which complaint is made, was erroneous and premature.

As no complaint is made of the sale of the three and one-half acres, part of the home place, it will not be disturbed, and the proceeds thereof, $9,500.00, will be applicable to the lien debt thereon, after distribution of the proceeds of the personal estate among the creditors. If it should be more than sufficient to pay the balance of that debt, the surplus will go to the other creditors or heirs or both, according to their legal rights.

It is unlikely, in view of the condition of the estate, as revealed by the statement of the case, that any further questions will arise. But it is merely suggested here, not decided, that the principles stated may lead to the following results, under conditions different from those disclosed by the record: If, after distribution of the personal estate among the creditors, the proceeds of the sale of the mortgaged land, subject to dower, are insufficient to pay the mortgage debt, the widow might elect to redeem as to the balance, so as to save her dower in full; and, having done so, might stand in the creditor's shoes, to the extent of the money paid by her, in redemption of her dower right, and be entitled to share pro rata with general creditors, on the basis of the amount so paid by her, in the distribution of the proceeds of any other real estate of her husband. All authorities say she may redeem and also that, by redemption, she does not make the debt her own. The statute makes the real estate of a decedent assets for the payment of his debts. Why is not the widow a creditor to the extent of the amount she has paid on the mortgage debt?

On reversal of the decrees of sale and confirmation, in so far as they relate to or affect the six and one-half acre tract, the title of the purchasers thereof will fall, since they were parties to the suit and vitally interested. *Dunfee* v. *Childs*,

45 W. Va. 155; *Martin* v. *Smith,* 25 W. Va. 585; *Buchanan* v. *Clark,* 10 Gratt. 164.

The conclusions stated make the error in the appointment of the receiver clearly manifest.

The error in the decree of sale, in so far as it relates to the three and one-half acre lot on which the green houses are, has been expressly waived, since it brought a larger price than was anticipated and will likely not be included in the portion to be conditionally assigned to the widow for dower. Hence the decree of sale and the decree confirming the sales made, in so far as they affect the 6½ acre lot and the right of dower in the home place, the decree of re-sale of said lot, the decree of Oct. 13, 1913, confirming the sale thereof, the decree of Oct. 11, 1913, adopting an erroneous basis for computation of dower in money, and the decree appointing the receiver will be reversed, the sale of the 6½ acre lot set aside and the cause remanded.

*Reversed and remanded.*

WILLIAMS, JUDGE, (concurring in the decree, but dissenting, in part, to the opinion. :

I concur in the reversal of the decree because of the error in ordering a sale of all the land, before settlement of the partnership and ascertainment of the amount of assets that testator's estate will receive therefrom, and application thereof to the relief of the incumbered land. The widow's dower and the inheritance of the heirs, in the equity of redemption, entitled them to that relief. I do not concur in that part of the opinion which holds that the widow is entitled to have the land incumbered by trust deed in which she joined her husband, sold subject to dower, and, in the event enough money is thereby realized to pay the balance of the indebtedness, to have dower in kind, as if no such lien existed. That excludes the heirs whose equity in the incumbered land is of equal dignity with her own. She is only entitled to dower in the equity of redemption, or surplus, not in the land itself. True her right is superior to all creditors, except vendor's lien creditors, and creditors whose liens existed before marriage or were created thereafter by mortgage or trust deed in which she joined, and is, of course, superior to the rights of

the heir, so far as payment of debts of the estate is concerned. The inheritance is subject to the rights of all creditors, while dower is affected by a certain class of debts only. But, by uniting in a mortgage, the widow's dower in the mortgaged land, under the doctrine of marshalling assets, becomes inferior to the right even of a general creditor. By uniting in the mortgage Mrs. Dudley released her contingent right of dower, which is thereafter a mere equity, not a legal estate, and can never become such until redemption. She is entitled only to dower in the surplus remaining after payment of the debt secured by the trust deed in which she joined. She gets it by virtue of statute, for by the common law the widow was dowable in a legal estate only. The fault I find with the opinion is, that it in effect allows the widow dower as if she had never released it, notwithstanding it is necessary to sell the greater portion of the incumbered land to pay off the incumbrance. She commuted her dower in all other lands of her husband's estate, which were sold, and could have applied that money to the discharge, pro tanto, of the incumbrance on the home place. If she had done so she would have been subrogated, pro tanto, to the right of the trust deed creditor as against the heirs. On the other hand, the heirs had the right to discharge the lien and thereby be subrogated to the lienor's rights as against the widow. The existence of this right is proof of their present equity in the incumbered land.

The wife was not dowable at common law in an equitable estate, and is now dowable therein only by virtue of statute. Sec. 17, Ch. 71, Code 1913; *Rowton* v. *Rowton,* 1 H. & M. 92; and *Claiborne and wife* v. *Henderson,* 3 H. & M. 322. Notwithstanding that statute, passed in Virginia in 1785, conferring right of curtesy and dower upon husband and wife, respectively, in trust lands, wherein they are the respective owners of a beneficial estate of inheritance, it was, nevertheless, thereafter held by the court of appeals of that state, that the widow was not dowable in the surplus remaining after satisfaction of a lien for the purchase money. *Wilson* v. *Davisson,* 2 Rob. 384. That decision was rendered by a divided court composed of three judges; and, in order to settle the question, the revisors of the code recommended to the legislature the passage of an act conforming the law to

the majority opinion. Revisors Reports, p. 565. The legislature, however, refused to pass the act in the form as recommended, and amended it, endowing the wife in the surplus. That statute has come down to us without any material alteration. Sec. 3; Ch. 65, Code 1913. Notice that it was not the legislative purpose to endow the wife in the land, incumbered as therein described, but only in the surplus. The statute expressly says, ''she shall have no right to be endowed in the said land.'' That is exactly what the court had decided the law was before the act was passed. If the statute is applicable only in case a sale of the incumbered land is made in the life time of the husband, it necessarily follows that the wife is not entitled to dower, even in so much as the surplus, in the case of a sale made after his death. But I think the statute was intended to apply whether the sale is made before or after the husband's death. His death only consummates the contingent dower created in the surplus by the statute, the only purpose of which was to endow the wife in the surplus. If it does not do that, in the case of a sale made after her husband's death, she has not dower in either land or surplus, because the common law only then applies. To limit the application of the statute to sales made in the husband's lifetime would produce absurd results which the legislature certainly never intended. It would cause the husband's death, an event necessary to consummate dower, to defeat the contingent right of dower in the surplus, expressly created by the statute.

To sell land subject to dower, to satisfy a trust deed lien in which the wife had joined, is equivalent to assigning dower in the whole of the land, as if it had not been released. By joining in a mortgage or trust deed on her husband's land, the wife releases dower in all but the equity of redemption. The value of that equity is the surplus remaining after satisfying the lien. If a sale is not made in the husband's life time, the equity of redemption, being an established inheritance, passes to the heirs, subject of course to dower, and entitles the heirs to redeem. In case they do so, equity requires the widow to contribute ratably before she can have dower in the land. 4 Kent's Com., p. 39; *Gibson* v. *Crehore,* 5 Pick. 146; *Swain* v. *Perine,* 5 John's Chan. (N. Y.) 482;

*Russell* v. *Austin,* 1 Paige, (N. Y.), 192; *Mills* v. *Van Voorhis,*
23 Barb. 125; *Bell* v. *The Mayor,* 10 Paige 49; *Adams* v. *Hill,*
29 N. H. 202; 1 Jones on Mortgages, Sec. 666; 1 Washburn
Real Property, Sec. 396; 1 Schribner on Dower, (2nd ed.),
pp. 530 and 531; Williams on Real Property, (17th ed.), pp.
378 and 379. Where the wife has joined in the mortgage or
trust deed, she can not claim dower in the incumbered land,
if the effect is to defeat the husband's general creditors. 1
Washburn on Real Property, Sec. 396; *Creecy* v. *Pearce,*
*Admr.,* 69 N. C. 67; and *Rossiter* v. *Cossit,* 15 N. H. 38.
Quoting from Judge Coalter's opinion in *Heth* v. *Cooke,* 1
Rand. 344: "If she parts with her dower by joining in a
mortgage after marriage, leaving only an equity in her
husband, which enures to her under the act, it cannot be said
that it enures to her as a legal estate, which she is entitled to
assert without redeeming; otherwise, her joining in the mort-
gage would pass nothing. Surely in such case, she only has
a right to redeem." And in 1 Lomax Dig. 103, the rule is
thus stated: "If the heirs redeem, or the widow brings her
writ of dower, she is let in for her dower on her contributing
her portion of the mortgage debt." In a comparatively recent
decision the supreme court of Virginia has reiterated the rule.
*Hoy* v. *Varner,* 100 Va. 600, 42 S. E. 690. The court there
decides: "Where there was no sale of the land in the life-
time of the husband, as in the case at bar, the equity of re-
demption descends to the heir, subject to the widow's dower;
but before she can be endowed in the whole land she must pay
an equitable proportion of the liens or incumbrances on the
land paramount to her dower."

Approving *Heth* v. *Cook, supra,* this court, in *Martin* v.
*Smith,* 25 W. Va. 579, held that: "A widow is not entitled
to dower in real estate subject to a vendor's lien except as to
the residue after satisfying such lien." So far as they affect
dower, a vendor's lien and a mortgage or trust deed in which
the wife has joined, stand on the same footing. In *Barbour* v.
*Thompkins,* 31 W. Va. 410, a case in which land of the
husband was sold to satisfy a trust deed in which the wife
had joined, and also other liens not affecting her dower, some
of which were prior, and some subsequent, to the trust deed,
this court held that: "the wife has no contingent right to

dower except in the surplus, after the trust lien is paid in full.'' Having contingent dower in the surplus only, how is it logically possible for her to acquire dower consummate in any more than the surplus, unless she redeems? In *Sinnett* v. *Cralle's Admr.*, 4 W. Va. 600, it was expressly held to be error to decree a sale of land subject to dower, to satisfy a vendor's lien. In that case, as in this; the sale had been decreed after the husband's death, in a suit to settle his estate; and this court reversed the decree for the error committed in decreeing the sale to be made subject to dower. I am clearly of the opinion that the only proper way to sell the Dudley home place is to sell it free of dower, and let Mrs. Dudley be endowed in the surplus, if any, after payment of all her husband's debts. The surplus, unquestionably, should go to the heirs, subject to dower. Mrs. Dudley is entitled to dower in the surplus of sales of the whole of the home place, that part heretofore sold as well as the part to be hereafter sold.   .   ·